# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JEFFREY TURNER, :

    Plaintiff, : Case No. 3:03-cv-0455

  vs. :

                                                           Chief Magistrate Judge Michael R. Merz

PERRY TOWNSHIP, OHIO, et al., :

    Defendants. :

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT**

---

This case came on for trial to the Court, sitting without a jury, on October 18, 2005.  The Court's findings of fact and conclusions of law, as required by Fed. R. Civ. P. 52, are as follows.

The Court has undisputed subject matter jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. §216.

The Plaintiff, Jeffrey Turner, was employed as a police officer by Defendant Perry Township, Montgomery County, Ohio, for the period May 8, 2001, through May 28, 2003.  During that entire period, Defendant Robert D. Bowman was Chief of Police for Perry Twp.  Prior to his employment with Perry Twp., Plaintiff had been employed as a police officer with the Brookville Police Department.  In 1999, he had acquired a Belgian Malinois dog named Kayla which was a seized asset of the State of Florida.  Kayla was certified for police work in Ohio in January, 2000.  Plaintiff himself is certified as a Master Canine Trainer by the Ohio Police Officer Training Academy; this certification subsumes qualification as a canine handler

Perry Twp.'s police canine program was created in 1996, about three years after Defendant

-1-

Bowman became Chief. He testified about the numerous advantages such a program has for a police department. Among other things, it enhances the capabilities of a department in crime detection (and perhaps prevention), makes the department a more attractive place to work for those with canine handling capabilities, and enhances public relations. Chief Bowman knew Plaintiff when Mr. Turner worked at the Brookville Department and recruited him for Perry Twp., believing the Perry Twp. Department could offer him more canine hours of employment and perhaps a more attractive career path. (Chief Bowman testified that Perry Twp. is not a career-oriented department and that many of its officers go on to full-time work with other law enforcement agencies.)

The Perry Township Police Department held Kayla out as a canine police officer, at least in part by publishing her picture and that of Officer Turner to the worldwide web. (See Plaintiff's Exhibit 3.)

Chief Bowman assigned officers in the Perry Twp. police department to their shifts and he assigned Plaintiff to work the night shift, 7 p.m. to 7 a.m. In its prior Decision and Entry Granting Defendants' Motion for Partial Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, the Court determined that Perry Twp.'s practice of paying law enforcement personnel was permissible because under section 207(k) of the Fair Labor Standards Act, the Perry Twp. was permitted to establish a policy of paying overtime only when those hours worked by an employee in a 14 day work period exceeded a maximum of 86 hours. Perry Twp.'s actual practice is more generous than the FLSA requires because it begins overtime pay at 80 hours.

The parties are in agreement that part of the duties of a canine police officer are training, exercising, feeding, and grooming the canine, seeing to its veterinary care, and maintaining the special equipment needed to use with the canine, including cleaning the police vehicle(s) in which

the canine is transported. In this case all of that additional work related to Kayla was the responsibility of Plaintiff; no other officer or Perry Twp. personnel participated in its performance.

Chief Bowman testified that he usually assigned the canine officers approximately 84 hours of shift work in a two-week period and then allowed an additional 12 hours for the additional duties involving canine care. He expected that the additional work could be done in that amount of time. If an occasional additional hour or so were needed, he would not object; but regular use of much more time would be problematic as the Township had not budgeted for more than that. He testified that the Township's current police budget is about $389,000 per year at present.

All Perry Twp. police officers are hourly employees, including now even Chief Bowman. As hourly employees, they were required to prepare time sheets showing the hours worked, which Chief Bowman then approved for payment, including any claimed overtime. Those time sheets have been submitted to the Court as the backup paperwork for Plaintiff's Ex. 8 which is a spreadsheet summarizing that information; Pl. Ex. 8 was admitted in evidence without objection by Defendants.

Plaintiff's duties as the night shift patrol officer were general police duties. Chief Bowman testified without contradiction that there would be an average of three calls per night. The parties dispute how much of that time could be used for the extra canine duties required of a canine handler. Perry Twp. has mutual aid agreements with surrounding jurisdictions and the Ohio Highway Patrol and Plaintiff was "on call" for those calls as well, e.g., drug detection work with the Highway Patrol. There were no fixed requirements about being "on call" and no disciplinary consequences for being unavailable; one would, however, miss the pay.

During his tenure at Perry Twp., Plaintiff Turner was, with Chief Bowman's approval, also a volunteer commissioned police officer for the Clark County Park District. It is unclear how much

time this consumed, but Plaintiff was not compensated for that time.

Different police departments have different features of their canine programs. In some, the working dogs would be publicly owned. At Perry Twp., however, the dogs remained the property of their handlers. The Township, however, paid veterinary bills and expenses for training seminars.

When Plaintiff was first hired, his hourly rate was $10.50 per hour. It was increased to $10.82 in January, 2002, and $11.25 in February, 2003.

Perry Twp.'s Police and Procedure Guidelines Manual was introduced in evidence as Defendants' Exhibit 2. It does not contain any procedures relating to the use of working dogs by the department. Chief Bowman testified that four hard copies of the Manual are maintained at the Township offices and one is maintained on the Township computer. Two of the hard copies are available for officers to sign out. He asserted that only four hard copies exist so that updating is easy. However, he also testified there had been no significant changes in the Manual since before Plaintiff was hired. Plaintiff testified that he had read the Manual when hired, then turned it back in.

Plaintiff asserted that he had provided Chief Bowman with several models of canine police policy and that Bowman had chosen and adopted the policy admitted in evidence as Plaintiff's Exhibit 4. Chief Bowman testified that he had never seen Plaintiff's Exhibit 4 until approximately ten days before trial and had never adopted it as policy. The Court credits Chief Bowman's testimony and concludes Exhibit 4 was not adopted as Township policy.[1]

---

[1] Both witnesses were examined about Plaintiff's Exhibit 5 which purports to be a description of the K-9 program written by Chief Bowman at the time of Plaintiff's employment and embodying what might be described as "policy" about the program. However, the document was not offered in evidence by either party.

-4-

During the entire course of his employment at Perry Twp., Plaintiff was a law enforcement officer engaged in law enforcement duties within the meaning of 29 U.S.C. § 207(k); his duties did not exempt him from the overtime payment provisions of that section. No member of the Perry Twp. Board of Township Trustees ever attempted to ascertain whether the overtime payment scheme used by the police department was in compliance with the FLSA.

The parties have stipulated that the summary of records of time and pay kept by Perry Township for Mr. Turner is accurate and admissible for all purposes; it was admitted in evidence as Plaintiff's Exhibit 8. That stipulation constitutes an admission by Defendants that Perry Township owes Plaintiff an additional $1,767.30 in overtime pay.

The question the Court must decide is whether Perry Twp. owes Plaintiff more than the admitted $1,767.30. Plaintiff testified that he spent approximately 27.4 hours on additional canine duties every two-week period during the approximately two years he worked. This amounts to a claim for an additional $24,752. Chief Bowman testified without contradiction that Plaintiff never made a claim for this or any additional overtime until six months or so after he left the Perry Twp. Police Department.

Plaintiff's testimony is based on his estimates of the amount of time needed to feed Kayla (ten minutes twice a day), train her (five hours per week), exercise her (4.5 hours per week), groom her (2.3 hours every two weeks), maintain her specialized equipment (3.5 hours every two weeks), and clean the squad car (2.3 hours every two weeks). Plaintiff kept no contemporaneous records of the amount of time he was spending. He did make claims for some time needed for the extra canine duties. When one examines the backup documents for Plaintiff's Exhibit 8, the time sheets which Plaintiff prepared and Chief Bowman approved, one finds entries for extra canine duties. For

-5-

example, on June 15, 2001, Plaintiff claimed eight hours for "K-9 training." Similar entries are found for June 7, 2001; July 10, 2001; July 13, 2001; July 27, 2001; August 10, 2001; August 24, 2001; September 21, 2001; November 2, 2001; and December 4-7, 2001. Similar entries occur in the 2002 and 2003 time sheets. These entries do not contain any claims for extra time used for grooming, feeding, or exercising Kayla or for maintaining the equipment or cleaning the squad car.

At one point, Mr. Turner claimed he was entitled to thirty minutes per day of on-duty time for performing these duties. In Plaintiff's Exhibit 1, he wrote sarcastically to the officer who was supposed to relieve him daily at 7 A.M.:

> Second, I am given 30 min a day by FSLA [sic] (Federal Labor Law) for K9 care. This time is while I am on duty. This is usually done at my residence, at the end of my shift. If you care to vacuum the PD I will be happy to groom my K9 in the PD road room area.

The leading case on the questions presented here is *Brock v. City of Cincinnati*, 236 F. 3d 793 (6th Cir. 2001 ). The Court noted the long-standing holding of the Supreme Court that off-duty work can still constitute work under the FLSA. *Id*. at 801, citing *Steiner v. Mitchell,* 350 U.S. 247, 256 (1944) (holding that employees must be compensated for "activities performed either before or after the regular work shift . . . if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed"). The *Brock* court also held, however,

> the Supreme Court long ago noted, the FLSA "does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible. Nor are we concerned here with the effect that custom and contract may have in borderline cases where the other facts give rise to serious doubts as to whether certain activity or non- activity constitutes work or employment." *Muscoda,* 321 U.S. at 597;

> *cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37, 89 L. Ed. 124, 65 S. Ct. 161 (1944). "This means that employers and employees may resolve whether certain activity is 'work' through a collective bargaining agreement, as long as the agreement comports with the FLSA." *Leahy v. City of Chicago*, 96 F.3d 228, 232 (7th Cir. 1996).

*Id.* at 801.

In *Brock*, the Sixth Circuit found the "reasonable agreement" provisions of 29 C.F.R. §785.23 "doubly appropriate in canine handler cases." *Id.* at 805. While there is no collective bargaining agreement applicable in this case, the Sixth Circuit cited authority in *Brock* allowing for such an agreement to be found from custom, as opposed to a written agreement. The Court concludes that Perry Twp. had such an agreement with Officer Turner and the other canine officers with two critical elements:

1. The usual bi-weekly work period was 84 hours, with 80 hours straight time and 4 hours overtime. Canine officers could spend appropriate on-duty time (i.e., within the 84 hours) and an additional twelve hours overtime in each bi-weekly period on the extra canine duties; and

2. Canine officers were required to report the time they worked on their time sheets.

*Brock* makes clear that the employer of a canine officer can restrict the amount of time spent on extra canine duty or allocate it between "work" time and "personal" time, recognizing that the working dogs become attached to their handlers and vice versa.[2] Perry Twp. did neither of these

---

[2] Plaintiff's testimony made it clear that the Belgian Malinois, however suited for police work, is not an appropriate pet or, in politically correct language, "companion animal." Nevertheless, Plaintiff remains the owner of two dogs of this breed, Kayla and Movato, neither of whom is any longer suitable for police work because of poor health and one of whom had been retired before he acquired Kayla, for whom he continues to care and maintain; neither has

-7-

things. It allowed the canine officers to use their own best professional judgment about what was needed and agreed to compensate up to twelve hours extra overtime for that care, provided the officer reported the time.

Plaintiff, of course, did not comply with the second part of this agreement. He made no claim for additional overtime until several months after he quit his employment with Perry Twp. Chief Bowman also made clear that if there had been claims for substantially over the 96 hours during the term of employment, he would have had to renegotiate the canine program with Plaintiff because the Township had budgeted for twelve hours overtime per bi-weekly period, not 39.4 (the sum of the twelve hours allowable and the 27.4 additional hours Plaintiff claims he worked on the average in each bi-weekly period). To put it another way, Plaintiff's claim if allowed would put the Township in the position of paying for work which, while it might have been useful, the Township did not agree to pay for, did not know was being expended, and would not have paid for if it had known Plaintiff was working it. The FLSA as interpreted in *Brock* and the cases it cites, does not require that result. See especially n. 5, *Id*. at 805, *quoting Holzapfel v. Town of Newburgh,* 145 F. 3d 516, 527 (2d Cir. 1998).

The Court expressly finds the agreement here to have been a reasonable one in light of all the circumstances: Township provision of on-duty time for some of the extra responsibilities involved with canine care and maintenance, the furnishing of a take-home cruiser for use with Kayla, Township payment for veterinary bills and special training sessions, all in light of the fact that Kayla remained and remains a "capital asset" of Plaintiff which he had and has available for

---

been euthanized as one might expect if the working dog were merely a "specialized weapon" which was no longer useful.

other working dog work, including his business of using her for non-police applications. The amount of extra overtime work authorized – six hours per week – is considerably more generous than the agreements found reasonable by the courts cited in *Brock*.

The Court particularly finds the requirement to claim the additional compensation in a timely manner to be reasonable as it allowed the officers flexibility in their handling of the dogs while also allowing Chief Bowman to manage his budget on a current basis.

The Township, by stipulating to the admission of Plaintiff's Exhibit 8, has admitted owing additional overtime pay to Plaintiff under the FLSA. It has also admitted that it did not obtain advice about its obligations under the FLSA. Under these circumstances, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime.

Therefore, the Clerk will enter judgment in favor of the Plaintiff and against the Defendants, jointly and severally, in the amount of $3,534.39.

Plaintiff is entitled to reasonable attorney fees for this litigation and shall submit an application within the time allowed by Fed. R. Civ. P. 54. Counsel for both parties are urged to consult and agree, if possible, on an appropriate fee to avoid further litigation.

October 19, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge